# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

DAVID JONES, ADC #94099                                                    PLAINTIFF

v.                           5:16cv00222-KGB-JJV

WENDY KELLEY, Director, Department
of Correction Compliance Office; *et al.*                           DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

    1.     Why the record made before the Magistrate Judge is inadequate.

    2.     Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. INTRODUCTION

David Jones ("Plaintiff") is an inmate of the Arkansas Department of Correction ("ADC"), and has filed this action *pro se* and pursuant to 42 U.S.C. § 1983. (Doc. No. 5.) He alleges his constitutional rights have been violated by prison officials who retaliated against him for filing lawsuits and grievances. (*Id*.) Mr. Jones states that, because he has a "reputation as being a prolific and proficient 'writ writer,' " prison officials denied him access to the law library and grievance system, and issued him a major disciplinary by fabricating a claim that Plaintiff was going to harm Defendant Mingo. (*Id*.)

I have previously recommended dismissal of all defendants except Defendants Taylor and Mingo. (Doc. Nos. 4, 30, 52.) Now before the Court is Defendants Taylor and Mingo's Motion for Summary Judgment. (Doc. No. 79.) Defendants argue they are entitled to qualified immunity because Plaintiff has failed to state actionable claims for violations of Mr. Jones's constitutional rights. (Doc. No. 80.) Plaintiff has responded, so the matter is ripe for a decision.

Mr. Jones's Amended Complaint is long and rambling. (Doc. No. 5.) Defendants have provided a Statement of Undisputed Material Facts (Doc. No. 81), but Mr. Jones disputes these

2

facts. (Doc. No. 86.) So, I will generally rely on Plaintiff's version of events in adjudicating this Motion.

Regardless of any disagreement over the facts, the claims Mr. Jones presents are fairly straightforward. Mr. Jones says Defendant Mingo prevented him from accessing the courts by denying him access to the law library and access to the grievance system. (Doc. No. 5 at 5-6, 9, 11-12.) He says Defendant Mingo refused to sign grievance forms and "Mingo ordered the [correctional officer] at the library to deny Plaintiff access [to the law library] if he tried to enter." (*Id.* at 12.) He also says Defendants Mingo and Taylor retaliated against him by issuing him a false major disciplinary and the disciplinary process violated his due process and equal protection rights. (*Id.* at 6, 12-17.) Lastly, he says Defendants retaliated against him by denying him visitation with his mother. (*Id.* at 17-18.)

After carefully reviewing the pleadings, for the following reasons, I find Defendants are entitled to qualified immunity and the Motion for Summary Judgment should be GRANTED.

## II.   STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th

3

Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.    QUALIFIED IMMUNITY

Defendants argue they are entitled to qualified immunity because they have not violated Mr. Jones's constitutional rights. (Doc. No. 80 at 6-15.) Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cnty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on the pleadings. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "*an immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether a defendant is entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether

4

that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

    A.    **Access to the Courts**

Inmates undeniably enjoy a constitutional right of access to the courts and the legal system. *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996). Retaliation for filing lawsuits and administrative grievances "violates both the inmate's right of access to the courts and the inmate's First Amendment rights." *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir.1989). To protect that right, prisons must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Myers*, 101 F.3d at 544.

"To prove a violation of the right of meaningful access to the courts, a prisoner must establish that the state has not provided the inmate with an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831-32 (8th Cir. 2008). An inmate sustains an actual injury when a nonfrivolous legal claim has been frustrated or impeded. *Id*. Alleging theoretical inadequacies is insufficient. *Id.* The inmate must show, for example, that a complaint he prepared

---

[1]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

was dismissed for failure to satisfy some technical requirement, which because of the inadequacies in the prison law library, the prisoner could not have known, or that the prison law library was so inadequate that it prevented him from filing a complaint for actual harm.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Myers*, 101 F.3d at 544.

Here, as Defendants correctly argue, Plaintiff does not state how he was actually hampered in his attempt to bring a specific suit.  (Doc. No. 80 at 10.)  Mr. Jones states, "Defendants [*sic*] refusal to sign Plaintiff's informal [grievance] may not violate due process protections in and of itself, but it did deny access to the courts and that claim is actionable under 1983."  (Doc. No. 5 at 11.)  Plaintiff is correct that such a denial is actionable.  But only when the denial leads to an actual injury.

I note Plaintiff has been able to successfully initiate suits against numerous defendants in this matter.  And the defense has raised no issues of failure to exhaust – leading me to conclude Plaintiff has also suffered no injury as a result of any difficulty with the grievance process.

Moreover, the United States Supreme Court has held that the constitutional right of access to the courts requires that prison authorities provide the resources "that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  *Lewis v. Casey*, 518 U.S. 343, 355 (U.S. 1996).

Therefore, I find Defendants' Motion should be granted on this point.  Plaintiff fails to establish a violation of his First Amendment rights so Defendants are entitled to qualified immunity on this claim and Plaintiff's access to courts claim should be dismissed.

**B.** **Retaliation**

Retaliatory conduct in response to the exercise of a constitutionally protected right is actionable, even if that conduct would have been otherwise proper. *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001); *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990). "Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Id.*; see also *Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir.1994) ("when retaliatory conduct is involved, there is no independent injury requirement"). But "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2nd Cir. 1996). So "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001) (not every response to a prisoner's exercise of a constitutional right is actionable); see also *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (speculative and conclusory allegations cannot support a retaliation claim).

To prevail on his retaliation claim, Plaintiff must show: (1) he engaged in protected activity; (2) Defendant responded with adverse action; and (3) his protected activity was the cause of the retaliation. See *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994) (threat of retaliation is sufficient injury if made in retaliation for inmate's use of prison grievance procedure). The United States Court of Appeals for the Eighth Circuit has held that an inmate claiming retaliation is faced with the substantial burden of proving that the actual motivating factor for the adverse action was as alleged. *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996). Moreover, this Circuit has also held that allegations of retaliation must be more than speculative and conclusory. *Atkinson v. Bohn*, 9 F.3d 1127, 1129 (8th Cir. 1996).

Here, Mr. Jones says his major disciplinary conviction was in retaliation for his filing grievances and his history as a "prolific and proficient 'writ writer.'" (Doc. No. 5 at 10.) I find his claims are wholly speculative and fail to support a constitutional claim of retaliation.

Plaintiff – for obvious reasons – feels wronged by the fact his conviction appears to be based solely on the word of a confidential informant. But Plaintiff has provided nothing more than his statement that, because he files grievances and lawsuits, Defendants concocted plan to have him punished through a major disciplinary. This is insufficient to support a claim of retaliation.

Additionally, Plaintiff omits the fact that he was afforded a hearing by an independent hearing officer who found him guilty of the offenses charged. (Doc. No. 79-3.) And he was also afforded appellate review by the Warden, Hearing Officer Administrator and the Director. (Doc. No. 79-3 at 4.) The guilty findings were upheld on appeal at all three levels. (*Id.*)

In weighing Plaintiff's disciplinary conviction, I must also consider whether it was supported by "some evidence." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). The Eighth Circuit has held "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as "some evidence" upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Id*. at 831. Here, Plaintiff was convicted of prison rules violations by an impartial hearing officer based on Defendant Taylor's report. (Doc. No. 79-3 at 5.) Although Plaintiff undoubtedly believes the hearing officer was biased against him, such a conclusory allegation is insufficient to overcome the "some evidence" rule.

"If the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prison rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail." *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994), *cert.*

*denied,* 515 U.S. 1145 (1995) (citing *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir. 1993), *cert. denied*, 512 U.S. 1209 (1994)); *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir.1990) (no retaliation claim can be stated when alleged retaliation arises from actual violation of prison regulations)); *See also Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008).

While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform. Any other rule would allow a prisoner to openly flout prison rules after filing a grievance and then bring a claim under section 1983 arguing that prison officials disciplined him in retaliation for his filing a grievance. *Orebaugh*, 911 F.2d at 528. So his false disciplinary claim must fail.

    **C.**    **Due Process**

The Fourteenth Amendment prohibits the deprivation of life, liberty, or property without due process of law, even for prisoners. *Hudson v. Palmer*, 468 U.S. 517, 539 (1984). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (citations omitted).

In order to maintain an actionable procedural due process claim, an inmate must show that he has been deprived of some constitutionally protected liberty or property interest. *See Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997) ("A due process claim is cognizable only if there is a recognized liberty or property interest at stake"). In prisoner cases, a constitutionally protected liberty interest will arise only when the prisoner can show that he has suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," as contemplated in *Sandin v. Conner, supra* at 484 (holding that disciplinary segregated confinement of an inmate

9

falls within expected parameters of prison life, and does not represent an "atypical and significant hardship," which would create a protected liberty interest).

The Eighth Circuit Court of Appeals has interpreted *Sandin* as follows:

> *Sandin* concluded that the inmate had no liberty interest in avoiding the disciplinary confinement in issue in that case because that confinement did not present an atypical and significant deprivation in relation to the ordinary incidents of prison life. Therefore, the Due Process Clause is not implicated despite the mandatory nature of the rules relating to the imposition of disciplinary confinement. The Court stated that there are some deprivations, and not necessarily those so severe as to independently trigger due process protection, against which states could conceivably create a liberty interest. Those are deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences.

*Moorman v. Thalacker*, 83 F.3d 970, 972 (8th Cir. 1996); See also, *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (holding that denial of visitation, exercise privileges, and religious services during thirty-seven day segregation was not an atypical, significant hardship, which would support the denial of a protected liberty interest, and stating that "[w]e have consistently held that demotion to segregation, even without cause, is not itself an atypical and significant hardship"); *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (prisoner had no constitutionally protected liberty interest in remaining in less restrictive prison environment, and therefore, was not denied due process); *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (prisoner has no liberty interest in avoiding segregation).

Mr. Jones's conditions of confinement described in his Amended Complaint do not amount to "atypical and significant hardships." While I agree that losing any privilege is surely a hardship to a prisoner, under the law, these conditions do not amount to atypical and significant hardships in relation to the ordinary incidents of prison life. Therefore, Plaintiff's claims in this regard should be dismissed.

### D. Equal Protection

Mr. Jones says he "was denied equal protection when he was denied access to the grievance process, falsely accused of very serious rule violations, had his mother suspended for 6 months from visitation, and by being treated different[ly] from others in general population." (Doc. No. 5 at 19.) "The heart of an equal protection claim is that similarly situated classes of inmates are treated differently and that this difference in treatment bears no rational relation to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998); *Hosna v. Groose*, 80 F.3d 298, 304 (8th Cir. 1996).

Mr. Jones's equal protection claims are frivolous. Here, Plaintiff's different treatment is wholly based on legitimate penal interests. He, therefore, fails to state a viable equal protection claim and his equal protection claim should be DISMISSED.

### E. Visitation

Mr. Jones says his rights were violated when prison officials suspended his mother's visitation privileges for six months. (Doc. No. 5 at 18.) He says once she informed prison officials she was visiting Mr. Jones, "the guard became [surly] and told [her] she could not visit wearing the blouse she had on because the guard could 'see some bra strap.'" (*Id.*)

Whether Mr. Jones even has a constitutionally-protected right to visitation is open to debate. See *Steinbach v. Branson*, No. 1:05-cv-101, 2007 WL 2985571 (D.N.D. Oct. 9, 2007). Nevertheless, according to Plaintiff's Amended Complaint, Defendants Taylor and Mingo were not involved in the events leading to Mr. Jones's mother being suspended from visitation. I realize Plaintiff believes the officials denying visitation were acting in concert with Defendants Taylor and Mingo, but there is absolutely no support for this claim. So it, too, should be dismissed.

## III. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. No. 79) be GRANTED.

2. Defendants Mingo and Taylor be DISMISSED with prejudice.

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations would not be taken in good faith.

IT IS SO RECOMMENDED this 27th day of July, 2017.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE